STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

Barry M. JENKINS, Defendant-Appellant.

Supreme Court

*No. 2005AP302–CR. Oral argument November 1, 2006.
—Decided July 12, 2007.*

2007 WI 96

(Also reported in 736 N.W.2d 24.)

161

For the plaintiff-respondent-petitioner the cause was argued by *Maura F.J. Whelan,* with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Melinda A. Swartz,* assistant state public defender.

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals[1] reversing thecircuit court's denial of Barry Jenkins' (Jenkins) presentence motion for plea withdrawal.

¶ 2. The case presents the recurrent question of how to review a circuit court's denial of a defendant's motion to withdraw his plea before sentencing, given the longstanding legal principle that a circuit court should "freely allow a defendant to withdraw his plea prior to sentencing for any fair and just reason, unless the prosecution [would] be substantially prejudiced."[2] *State v. Bollig,* 2000 WI 6, ¶ 28, 232 Wis. 2d 561, 578, 605 N.W.2d 199. In this case, the State does not argue that it would be substantially prejudiced by Jenkins' plea withdrawal. Therefore, the issues are whether Jenkins had a fair and just reason to withdraw his plea and how a reviewing court should review the circuit court's denial of Jenkins' motion.

¶ 3. Jenkins contends that he offered a fair and just reason, namely a misunderstanding of the consequences of his plea, to support his presentence motion for plea withdrawal. He contends that he misunderstood the consequences of his plea because he thought that he would be guaranteed the opportunity to work with law enforcement to potentially affect his sentence. Jenkins asserts that the circuit court erred when it

---

[1] *State v. Jenkins,* 2006 WI App 28, 289 Wis. 2d 523, 710 N.W.2d 502.

[2] This rule for withdrawal of a guilty plea prior to sentencing should not be confused "with the rule for post-sentence withdrawal where the defendant must show the withdrawal is necessary to correct a manifest injustice." *Dudrey v. State,* 74 Wis. 2d 480, 483, 247 N.W.2d 105 (1976) (citing *State v. Reppin,* 35 Wis. 2d 377, 151 N.W.2d 9 (1967)); *see State v. Brown,* 2006 WI 100, ¶ 18, 293 Wis. 2d 594, 716 N.W.2d 906.

denied his motion because it considered only whether a breach of the plea agreement had occurred, rather than whether he misunderstood the consequences of his plea.

¶ 4. The State contends that the circuit court did not err when it denied Jenkins' motion because the circuit court did not believe that Jenkins misunderstood the consequences of his plea. It posits that Jenkins may have hoped to work with law enforcement but that the evidence does not show that Jenkins actually believed or was led to believe that he would be guaranteed the opportunity to work with law enforcement. The State contends that the court of appeals erred when it reversed the circuit court's decision because it did not apply the appropriate standard of review and did not defer to the circuit court's credibility and factual determinations. Instead, it argues, the court of appeals substituted its own determinations for those of the circuit court.

¶ 5. We conclude that the circuit court did not erroneously exercise its discretion when it denied Jenkins' motion to withdraw his plea. From the beginning, Jenkins was represented by counsel. He had a lengthy criminal history, including two prior felony convictions, parole revocations, and incidents of violence. He was charged with selling heroin. He had several months to consider a plea agreement offered by the State. This agreement did not include a promise that Jenkins would be guaranteed the opportunity to work with law enforcement. At the plea hearing, Jenkins participated in a thorough plea colloquy with the court, with the active participation of his attorney, and the record supports the circuit court's determination that Jenkins understood the consequences of his plea. Jenkins did not attempt to withdraw his plea until the sentencing

hearing, more than two months after he had entered the plea. By that time, he had read the recommendations for sentence in his presentence investigation.

¶ 6. Because the circuit court's decision to grant or deny a motion for plea withdrawal is within its discretion, we must affirm the circuit court's decision as long as it was demonstrably " 'made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law.' " *State v. Canedy,* 161 Wis. 2d 565, 579, 469 N.W.2d 163 (1991) (quoting *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981)). After applying the appropriate standard of review and finding support for the circuit court's decision in the record, we conclude that the circuit court did not err. Accordingly, we reverse the court of appeals.

## I. BACKGROUND AND PROCEDURAL HISTORY

¶ 7. On September 12, 2002, Jenkins was charged with delivery of a controlled substance-heroin (3 grams or less), contrary to Wis. Stat. §§ 961.14(3)(k) and 961.41(d)(1).[3] The charge arose out of a September 6, 2002, incident in which two undercover police officers purchased heroin from a person they later identified as Jenkins. On October 2, 2002, a preliminary hearing was conducted and Jenkins was bound over for trial. The State filed an information, and Jenkins pled not guilty.

¶ 8. In mid-November Jenkins' first defense counsel moved to withdraw. He was succeeded by Attorney Paul Barrett. At a December 18 scheduling conference, Attorney Barrett learned that Jenkins had written a

---

[3] All references to the Wisconsin Statutes are to the 2003–2004 version unless otherwise indicated.

December 1 letter to Milwaukee County Circuit Judge Elsa Lamelas without consulting an attorney.

¶ 9. In that letter, Jenkins complained about alleged flaws in police procedure,[4] the purported inadequacy of his first attorney, and excessive bail. He added:

> I've now become even more convinced that I'll not be able [to] fully prove my innocence—which only leaves me with one other option. *That is to except [sic] this plea offering, which seems to be the best thing to do, before deciding to go into a full trial,* and find myself overpowered by the judicial system and found guilty for a crime I truly was never a part of.

(Emphasis added). Nonetheless, Jenkins insisted that his identification was faulty and should be suppressed.

¶ 10. On December 19, Attorney Barrett wrote to Jenkins, advising him that ex parte letters to the court were "totally inappropriate." He then addressed a separate letter that Jenkins had written to the District Attorney's office about the possibility of receiving some benefit at sentencing in exchange for divulging relevant information about other drug perpetrators. Attorney Barrett wrote:

> I was also informed by Assistant District Attorney Steven Glamm that you wrote to him concerning the possibility of getting some benefit for some information

---

[4] In the December 1, 2002, letter to Judge Elsa Lamelas, Jenkins complained about the photo array procedure that led to his identification and asked the judge to suppress the evidence. On February 11, 2003, Attorney Barrett filed a motion to suppress identification on the grounds that the identification procedures were impermissibly suggestive. After Jenkins pled guilty to the charge against him, Attorney Barrett withdrew this motion.

that you know. It is often possible to work out an arrangement where a defendant gets credit for what aid he gives to the police departments. He might even get enough credit that the police would testify at a sentencing hearing so the defendant would not be sent to prison. Assistant District Attorney Glamm is willing to work out some arrangement, but he insists that you take responsibility for your acts beforehand. That is, acknowledge that it was you making the hand to hand buy from the police officers. If you then wish to work with officers from narcotics or vice, that can be arranged. You would be debriefed and given use immunity for anything that you told to them. They would then make arrests or get warrants leading to arrests. If there were productive arrests from your information, you would be given credit. You might be given a lot of credit if you further testified against perpetrators. Bear in mind that all of this is predicated on acceptance of responsibility for the crime for which you were charged.

¶ 11. Two months later, on February 24, 2003, Jenkins entered a guilty plea to the charge. The plea agreement, which was the same as one offered to Jenkins through his first attorney, was that, in exchange for Jenkins' plea, the State would recommend 24 months initial confinement, 24 months extended supervision, and a $1000 fine, plus costs. In the plea colloquy, the court specifically asked Jenkins if the State's recitation of this agreement was correct, and Jenkins answered that it was.[5] The court then asked Jenkins if he understood the charges and penalties against him, and Jenkins replied that he did. He also

---

[5] The court stated:

THE COURT: Mr. Jenkins, has Miss Carrick correctly set forth what the State is required to recommend at the time of sentencing?

THE DEFENDANT: Yes.

said he understood that the court was not required to follow the State's recommendation on sentencing. Jenkins then pled guilty to the charge of Delivery of a Controlled Substance-Heroin.

¶ 12. Before accepting the plea, the court went through the rights that Jenkins was waiving and the elements of the crime. The court asked Jenkins if anybody had promised anything to get him to plead guilty, other than the State's promised recommendation on sentencing. Jenkins replied, "No, they haven't." Jenkins said that no one had threatened him. Asked whether he was pleading guilty because he was guilty, Jenkins replied, "Totally."

¶ 13. In discussing the basis for the charge, Jenkins told the court that he did not completely agree with the allegations in the criminal complaint. He asserted that, unlike allegations in the complaint, he did not speak to the undercover officers during the drug buy. When asked how delivery took place without any speaking, Jenkins replied that "there wasn't no need for talking. It was already [understood] what they are there for."

¶ 14. Near the end of the plea hearing, the court asked counsel whether Jenkins was "possible FDOATP material," meaning whether he was a candidate for the Felony Drug Offender Alternatives to Prison Program. Attorney Barrett replied that he was asking for a 45–day adjournment because "[the defendant] has some people that he needs to talk to that may influence your judgment on sentencing." He added, "I think that a presentence investigation may be of help to you as well." The court then granted a two-month adjournment. After a bailiff pointed out that Jenkins was already in the Dodge Correctional Institution on another offense,

however, the court said: "He's already in Dodge. . . . So he won't be going to FDOATP, or, at least, I don't think they would ever take him."

¶ 15. On April 19, 2003, shortly before the scheduled sentencing, Jenkins sent a new letter to Judge Lamelas. He complained about a conspiracy against him. He stated that it was his understanding that he would have to plead guilty to the charge in order to receive any type of benefit or relief in terms of an agreement.[6] He also told the court that the plea he entered was not genuine or of his own free will, that he entered the guilty plea "for the purpose of mentally gaining [the court's] approval." He told the court that he was "not guilty of these accusations." Jenkins also complained about Attorney Barrett's representation and asked the circuit court to dismiss the case.

¶ 16. When a sentencing hearing finally occurred on April 28, defense counsel renewed a motion to adjourn it for 30 to 60 days. He offered the following two reasons: (1) an adjournment would not prejudice the State because Jenkins was currently incarcerated on another charge; and (2) Jenkins was hoping to cooperate with the State to help himself at sentencing.[7]

¶ 17. Defense counsel then explained his efforts. He said that he had approached Assistant District Attorney Glamm about the possibility of Jenkins' coop-

---

[6] Jenkins wrote, "My understanding . . . [is that] I would half [sic] to plead guilty to the charge that was being held against me in order of receiving any type of benefit or relief in terms of an agreement, in this matter."

[7] The court indicated that it had an off-the-record conversation the week before with the parties, and during that conversation, the court indicated that it was disinclined to adjourn the sentencing hearing.

eration with law enforcement and was told that Jenkins would first have to accept responsibility for the charge. Defense counsel told the court that Jenkins had accepted responsibility. He said that after the plea hearing, the State made arrangements for two detectives to meet with Jenkins and that after this meeting, one of the detectives told defense counsel that Jenkins had "volumes of information; good information." He said the detective advised counsel, however, that because Jenkins was incarcerated and would be unable to arrange a narcotics transaction, he would not be able to get any credit. The detective told defense counsel that he would try to influence the liaison officer from the federal government to interview Jenkins. With permission, defense counsel contacted a different assistant district attorney, a special prosecutor working with the federal government, who indicated that he would refer Jenkins' offer to three federal agencies. He said the special prosecutor later told defense counsel that he was having trouble interesting the federal government because of its increased focus on terrorism. The special prosecutor then told defense counsel that he would refer the matter to a fourth federal agency. As of the sentencing hearing, however, no federal agents had contacted Jenkins.

¶ 18. Defense counsel asked for an adjournment of the sentencing hearing because it was unclear whether federal agents were not interested in talking to Jenkins or whether they simply did not have the time or resources to do so. He made an offer of proof indicating that Jenkins had knowledge of a drug-dealing network that imported thousands of pounds of heroin from Nigeria. He urged an adjournment, suggesting that the use of Jenkins' information would be an effective way to attack the heroin trade in Milwaukee.

170

¶ 19. In response, the court asked defense counsel if he was "suggesting that the defendant entered a guilty plea because he had some sort of sense that he would definitely be working with authorities." Barrett responded:

> I was suggesting that I told him that he would have to accept responsibility as the entry card to doing this work. Mr. Glamm insisted on that.
>
> He said, ["]that's okay if I can get to talk to these people, I have a lot to tell them,["] and then I [Barrett] proceeded to do the debriefing so I could make an offer of proof. I think in his mind
>
> . . . . [court interjects]
>
> he was not thinking that he would get out of everything, that maybe you would go along with Mr. Glamm on the recommendations or something like that, but it was more to get out of the business and that he would have some . . . good come of it, that you could consider it in making your sentencing. Yes, Your Honor, I do believe that.

¶ 20. The court did not grant an adjournment. It reasoned that Jenkins had already been transported from prison to Milwaukee and had been incarcerated for about eight months since the offense, and that the authorities were apparently not interested in Jenkins' cooperation. The court stated that, absent a showing that Jenkins' guilty plea was premised on the notion that there would be cooperation and that the failure of additional agents to meet with Jenkins constituted a breach of the plea agreement, it was not prepared to adjourn sentencing again. Defense counsel Barrett replied that nothing was said at the plea hearing about Jenkins working with law enforcement officials as part of the plea agreement. He stated that he did not have a

good faith ability to move for a change in plea because he did not allude to any condition of cooperation on the record during the plea taking, but he suggested that Jenkins might want to make a motion.

¶ 21. The court then reiterated the terms of the plea agreement and asked Jenkins if these terms were his understanding of the agreement. Jenkins replied that they were, but then said he wanted to withdraw his plea. The court asked Jenkins the basis of his request. Jenkins replied:

> Stipulations that I'm not able to fulfill, what I had my projections on. I'm sure the federal agents were meaning to speak to me.
>
> Mr. Barrett has done a lot, you know, in regards to this, and it's on the basis, the sole basis is it was initially my part, my purpose of entering the plea that I entered which was a guilty plea, and I would just like to withdraw my plea.

The court then asked Jenkins his understanding of what was going to happen when he entered a plea. He replied:

> At least I would benefit, at least, you know, something, at least to, you know, be able to get out of the life I'm already in or I was involved in at the time. And sort of, you know, they bring in at least to assist the state here, you know, from much of the troubles I've caused and the stress we place on Milwaukee, the police department here in this state, and sort of abolish this heroin that's flowing into the states and guns and everything else, so sort of just kind of get myself cleared up and get back on track.
>
> It's not too much about the time, you know. It's not much time. I've done, as you can read, I've done time before. My point is just to get some changes, you know, with myself and help.

172

¶ 22. The court denied Jenkins' motion to withdraw his plea. It stated:

> Mr. Jenkins, no one has a right to any kind of special treatment. Sometimes a plea agreement is reached that has certain specific parts to it that require one party to do something or the other party to do something else. And from what [defense counsel] has told me and what [the prosecutor] has told me, that was not part of the plea agreement that was reached here. *So you had a hope that did not come to fruition.* Nothing happened. No one came to see you. But I don't see that that was a violation of a plea agreement; therefore, I will not permit you to vacate your plea and we will proceed to sentencing.

(Emphasis added.)

¶ 23. The court then conducted a sentencing hearing and imposed a total sentence of eight years, with five years initial confinement and three years of extended supervision, plus a $500.00 fine.

¶ 24. Jenkins filed a motion for post-conviction relief on two grounds: (1) the court erred when it denied Jenkins' request to withdraw his guilty plea prior to sentencing; and (2) Jenkins was denied his constitutional right to effective assistance of counsel when trial counsel failed to move for plea withdrawal before sentencing. Jenkins later filed a supplemental motion on a third ground: manifest injustice, because Jenkins' guilty plea was not knowing, intelligent, and voluntary. As part of his claim of manifest injustice, Jenkins argued that (1) he did not understand the terms of the plea agreement; (2) he was denied the effective assistance of counsel because his trial counsel failed to adequately explain the terms of the plea agreement; and (3) his plea was not knowing and voluntary because the court failed to inform him during the plea colloquy

173

that Wisconsin's Truth in Sentencing legislation mandates that he serve each day of confinement imposed by the court.

¶ 25. The circuit court denied the parts of Jenkins' motion based on grounds that there was a fair and just reason for plea withdrawal, that he was denied the effective assistance of counsel, and that a manifest injustice occurred because he misunderstood the terms of the plea agreement.[8]

¶ 26. Jenkins appealed, and the court of appeals reversed, holding that the circuit court erroneously exercised its discretion when it denied Jenkins' presentence motion to withdraw his plea. *State v. Jenkins,* 2006 WI App 28, ¶ 19, 289 Wis. 2d 523, 710 N.W.2d 502. The court of appeals determined that Jenkins "had a genuine misunderstanding about whether he would be guaranteed an opportunity to work with law enforcement to potentially receive a benefit at sentencing." *Id.,* ¶ 24. The court of appeals said that Jenkins' misunderstanding was corroborated with undisputed, substantial evidence in the record. *Id.* The court declared that the circuit court erred when it considered Jenkins' reason for plea withdrawal in terms of a breach of plea agreement and not in terms of a misunderstanding of

---

[8] The court held in abeyance Jenkins' claim that a manifest injustice occurred when the court failed to inform him of the Truth in Sentencing requirement. The circuit court held this claim in abeyance, pending our decision in *State v. Uhde,* whose certification from the court of appeals we later vacated. *State v. Uhde,* 2004 WI 138, 276 Wis. 2d 31, 689 N.W.2d 59. The circuit court later denied this claim, and Jenkins appealed. The defendant did not raise the issue on appeal of whether his plea was knowingly and voluntarily entered when the court failed to inform him that he must serve every day of his initial confinement.

the plea. *See id.,* ¶ 25. Because the court of appeals held that Jenkins had a fair and just reason to withdraw his plea before sentencing, it did not address the other two issues of ineffective assistance of counsel and manifest injustice. *Id.,* ¶ 1.

¶ 27. The State petitioned this court for review, which we granted on June 14, 2006.

## II. DISCUSSION

### A. General Principles and Standard of Review

¶ 28. In 1991 this court stated that "[t]he appropriate and applicable law" when a defendant seeks to withdraw his plea before sentencing is that the "defendant *should* be allowed to withdraw a guilty plea for any fair and just reason, unless the prosecution would be substantially prejudiced." *Canedy,* 161 Wis. 2d at 582. In 1995 the court said a circuit court should "freely allow a defendant to withdraw his plea prior to sentencing if it finds any fair and just reason for withdrawal, unless the prosecution has been substantially prejudiced by reliance on the defendant's plea." *State v. Garcia,* 192 Wis. 2d 845, 861, 532 N.W.2d 111 (1995). In 1999 the court said that where a defendant moves to withdraw his plea before sentencing, "the circuit court is to look only for a fair and just reason and freely allow the withdrawal." *State v. Kivioja,* 225 Wis. 2d 271, 287, 592 N.W.2d 220 (1999). In 2000 the court, citing *Garcia,* said that the circuit court "should freely allow a defendant to withdraw his plea prior to sentencing for any fair and just reason, unless the prosecution will be substantially prejudiced." *Bollig,* 232 Wis. 2d 561, ¶ 28 (citing *Garcia,* 192 Wis. 2d at 861).

¶ 29. Although in recent years the court has consistently articulated a liberal rule for plea withdrawal

before sentencing, it has not consistently allowed plea withdrawal in its cases. The overriding reason is that the decision to grant or deny "the motion to withdraw the plea rests within the sound discretion of the circuit court." *Kivioja,* 225 Wis. 2d at 302 (Abrahamson, C.J., dissenting); *see Bollig,* 232 Wis. 2d 561, ¶ 28. This discretion gives the circuit court latitude in assessing the defendant's reason and determining whether it is fair and just under the circumstances.

¶ 30. A circuit court's discretionary decision to grant or deny a motion to withdraw a plea before sentencing is subject to review under the erroneous exercise of discretion standard. *Kivioja,* 225 Wis. 2d at 284. All that "this court need find to sustain a discretionary act is that the circuit court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982); *see Kivioja,* 225 Wis. 2d at 284 (citing *State v. Salentine,* 206 Wis. 2d 419, 429–30, 557 N.W.2d 439 (Ct. App. 1996)). In *Canedy,* the court said it would affirm the circuit court's decision as long as it was demonstrably " 'made and based upon the facts appearing in the record and in reliance on the appropriate or applicable law.' " *Canedy,* 161 Wis. 2d at 579 (quoting *Hartung,* 102 Wis. 2d at 66).

¶ 31. A "fair and just reason" has never been precisely defined. *State v. Shimek,* 230 Wis. 2d 730, 739, 601 N.W.2d 865 (Ct. App. 1999). Indeed, the fair and just reason standard "lack[s] any pretense of scientific exactness." *United States v. Barker,* 514 F.2d 208, 220 (D.C. Cir.) (en banc), *cert. denied,* 421 U.S. 1013 (1975). This court has said that the term contemplates "the

176

mere showing of some adequate reason for the defendant's change of heart," *Libke v. State,* 60 Wis. 2d 121, 128, 208 N.W.2d 331 (1973), and that "the exercise of discretion requires the [circuit] court to take a liberal, rather than a rigid, view of the reasons given for plea withdrawal." *Bollig,* 232 Wis. 2d 561, ¶ 29. Nonetheless, "[w]hether a defendant's reason adequately explains his or her change of heart is up to the discretion of the circuit court." *Kivioja,* 225 Wis. 2d at 284 (citing *Canedy,* 161 Wis. 2d at 584).

■

¶ 32. Withdrawal of a guilty plea before sentencing is not an absolute right.[9] *Canedy,* 161 Wis. 2d at 583. The defendant has the burden to prove by a preponderance of the evidence that he has a fair and just reason. *Garcia,* 192 Wis. 2d at 862; *Canedy,* 161 Wis. 2d at 583–84. The reason must be something other than the desire to have a trial, *Canedy,* 161 Wis. 2d at 583, or belated misgivings about the plea. *See Tucker v. United States,* 470 F.2d 220, 221 (8th Cir. 1972), *cert. denied,* 412 U.S. 929 (1973).

■

¶ 33. On review of the circuit court's decision, we apply a deferential, clearly erroneous standard to the court's findings of evidentiary or historical fact. *State v. Turner,* 136 Wis. 2d 333, 343, 401 N.W.2d 827 (1987). The standard also applies to credibility determinations. *Cf. Canedy,* 161 Wis. 2d at 579; *Dudrey v. State,* 74 Wis. 2d 480, 483, 247 N.W.2d 105 (1976). In reviewing factual determinations as part of a review of discretion,

---

[9] When the defendant establishes the denial of a relevant constitutional right, withdrawal of the plea is a matter of right and the court has no discretion in the matter. *State v. Van Camp,* 213 Wis. 2d 131, 139, 569 N.W.2d 577 (1997).

we look to whether the court has examined the relevant facts and whether the court's examination is supported by the record. *State v. Shanks,* 152 Wis. 2d 284, 289, 448 N.W.2d 264 (Ct. App. 1989).

¶ 34. When there are no issues of fact or credibility in play, the question whether the defendant has offered a fair and just reason becomes a question of law that we review de novo. To illustrate, a defendant's genuine misunderstanding of the consequences of a plea is a fair and just reason to withdraw his plea. *See Garcia,* 192 Wis. 2d at 862; *Dudrey,* 74 Wis. 2d at 405. But whether such a misunderstanding actually exists is a question of fact, and the circuit court's determination depends heavily on whether the court finds the defendant's testimony or other evidence credible and persuasive. If "the circuit court does not believe the defendant's asserted reasons for withdrawal of the plea, there is no fair and just reason to allow withdrawal of the plea." *Garcia,* 192 Wis. 2d at 863.

¶ 35. Where the circuit court provides an inadequate account to show an application of the facts to the proper legal standard, we "independently review the record to determine whether the trial court's decision can be sustained when the facts are applied to the applicable law." *Libke,* 60 Wis. 2d at 129; *Shanks,* 152 Wis. 2d at 289. This review is evidence of an appellate court's desire to uphold a circuit court's discretionary decision if there is good justification for the decision present in the record.

¶ 36. In her dissent in *Kivioja,* Chief Justice Abrahamson wrote: "The court of appeals certified the present case to this court because it perceived inconsistencies in certain Wisconsin appellate decisions inter-

preting and applying the 'any fair and just reason' standard." *Kivioja,* 225 Wis. 2d at 302 (Abrahamson, C.J., dissenting). This inconsistency appears to exist not only among opinions but also within opinions, making the law governing plea withdrawal before sentencing difficult to apply.

## B. History of the Fair and Just Reason Standard

¶ 37. This court first adopted the fair and just reason standard, proposed by the American Bar Association (ABA) Project on Minimum Standards for Criminal Justice, in 1967. *See State v. Reppin,* 35 Wis. 2d 377, 151 N.W.2d 9 (1967). At that time, the ABA's tentative draft provided that "[b]efore sentence, the court in its discretion *may* allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea." *Id.* at 385 n.2 (quoting American Bar Association Project on Minimum Standards for Criminal Justice—Pleas of Guilty § 2.1 (Tentative Draft, Feb., 1967)) (emphasis added).

¶ 38. This language becomes clearer when it is placed in the context of the broader rule:

2.1 Plea Withdrawal

(a) The court should allow the defendant to withdraw his plea of guilty or nolo contendere whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct a manifest injustice. . . .

(b) In the absence of a showing that withdrawal is necessary to correct a manifest injustice, a defendant may not withdraw his plea of guilty or nolo contendere as a matter of right once the plea has been accepted by

179

the court. *Before sentence, the court in its discretion may allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.*

American Bar Association Project on Minimum Standards for Criminal Justice—Pleas of Guilty § 2.1 (Tentative Draft, Feb. 1967) (emphasis added); *see Reppin,* 35 Wis. 2d at 385 n.2.

¶ 39. In *Libke* (1973) and *Dudrey* (1976), we applied the ABA's 1968 approved draft (which was in pertinent part the same as the tentative draft), but instead of providing that the court *may* allow the plea withdrawal, we used the word "should" in our analysis: (1) "[W]e are convinced that the trial court applied the wrong standard [manifest injustice] and since the defendant did present a 'fair and just reason' to permit a plea withdrawal, the defendant should have been permitted to withdraw his guilty plea." *Libke,* 60 Wis. 2d at 129. (2) "Under this [ABA 2.1(b)] standard, leave to withdraw a guilty plea should be freely granted prior to sentencing where there is a fair and just reason for doing so presented by the defendant." *Dudrey,* 74 Wis. 2d at 482.

¶ 40. In 1979 the ABA standard was revised to read as follows: "After entry of a plea of guilty or nolo contendere and before sentence, the court *should* allow the defendant to withdraw the plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea." *See Canedy,* 161 Wis. 2d at 581 (quoting American Bar Association Project on Minimum Standards for Criminal Justice—Pleas of Guilty § 14–2.1 (1979)).

¶ 41. The commentary on the new ABA standard noted that "[t]his change from [*may* to *should*] reflects the belief that prior to sentencing, when there is a basis

for the defendant's motion and the absence of compelling prosecutorial reason for its denial, withdrawal of a plea of guilty or nolo contendere normally should be allowed." *Id.* at 582 (citing Note, American Bar Association Project on Minimum Standards for Criminal Justice—Pleas of Guilty § 14–2.1 (1979)). This commentary appears to reject the commentary to the 1968 rule, which reads in part:

> There does not appear to be any good reason for allowing withdrawal as a matter of right, absent a showing of manifest injustice, once the court has accepted the plea.
>
> The standard does recognize the generally acknowledged discretion of the judge to permit withdrawal before sentence even in the absence of a manifest injustice. This is a matter solely within the discretion of the judge; he may but need not grant the motion.

American Bar Association Project on Minimum Standards for Criminal Justice—Pleas of Guilty § 2.1(b) (Approved Draft, 1968).

¶ 42. There is no dispute that the shift from "may" to "should" constituted movement toward a more lenient standard of presentence plea withdrawal. At the same time, however, this court *never* abandoned the "discretion" that was so prominent in the 1967–68 rule. We emphasized the trial court's discretion in *Libke,* 60 Wis. 2d at 126–27 (quoting *United States v. Fernandez,* 428 F.2d 578, 580 (2d Cir., 1970)); *see also Libke,* 60 Wis. 2d at 129 (Hansen, Robert W., J., concurring); *Dudrey,* 74 Wis. 2d at 482–83 (withdrawal is a determination "addressed to the sound discretion of the trial court and will be reversed only for an abuse of that

181

discretion"); and *Canedy,* 161 Wis. 2d at 579, 584, 586. "Discretion" appears to temper "fair and just reason" in all our cases.

C. Application of the Fair and Just Reason Standard

¶ 43. On the surface, the language and history of the fair and just reason standard suggest that a defendant is required to meet a relatively low burden to justify plea withdrawal before sentence. In actual application, however, the burden has been more difficult. Upon a motion to withdraw a plea before sentencing, the defendant faces three obstacles. First, the defendant must proffer a fair and just reason for withdrawing his plea. *Canedy,* 161 Wis. 2d at 583–84. Not every reason will qualify as a fair and just reason. Second, the defendant must proffer a fair and just reason that the circuit court finds credible. *Id.* at 585. In other words, the circuit court must believe that the defendant's proffered reason actually exists. *Id.* Third, the defendant must rebut evidence of substantial prejudice to the State. *Id.* at 582.

¶ 44. If the defendant does not overcome these obstacles in the view of the circuit court, and is therefore not permitted to withdraw his plea, the defendant's burden to reverse the circuit court on appeal becomes relatively high. This is so because, on appeal, the defendant has two additional and substantial obstacles. The first obstacle is the applicable standard of review, which requires the reviewing court to affirm the circuit court's decision unless it is clearly erroneous. The second obstacle is the extensive plea colloquy required of circuit courts. The plea colloquy is designed to secure a knowing, intelligent, and voluntary plea from the defendant and a developed record from which reviewing courts may evaluate the circuit court's decision.

¶ 45. We discuss each of these latter two obstacles in turn.

1. Standard of Review

¶ 46. As we previously noted, under the erroneous exercise of discretion standard of review, the reviewing court upholds the circuit court's factual and credibility determinations if there is support for them in the record. Moreover, even if the circuit court misapplies the law or inadequately explains the reasons for its decision, the reviewing court must independently review the record to find support for the circuit court's decision if the justification is there. *Shanks,* 152 Wis. 2d at 289.

¶ 47. A review of the applicable plea withdrawal cases reveals that, under this standard of review, reviewing courts are likely to affirm the circuit court's decision either to grant or deny a motion to withdraw a plea. For example, in *State v. Manke,* 230 Wis. 2d 421, 602 N.W.2d 139 (Ct. App. 1999), the court affirmed the circuit court's decision to grant the defendant's motion to withdraw his plea. In that case, the State argued that the circuit court failed to identify the specific fair and just reason it relied on when granting Manke's motion. *Id.* at 428. The court of appeals responded that it was "obliged to search the record for facts supporting the court's discretionary act." *Id.* After searching the record for evidence of misleading advice from the defendant's attorney and the defendant's misunderstanding of the plea, the court was "convinced that the record support[ed] the trial court's conclusion that Manke presented a fair and just reason." *Id.* at 430.

¶ 48. Reviewing courts have been equally supportive of a circuit court's decision to deny a defendant's motion for plea withdrawal. *See, e.g., Bollig,* 232

Wis. 2d 561; *Kivioja,* 225 Wis. 2d 271; *Garcia,* 192 Wis. 2d 845; *Canedy,* 161 Wis. 2d 565; *Dudrey,* 74 Wis. 2d 480; *State v. McKnight,* 65 Wis. 2d 582, 223 N.W.2d 550 (1974); *State v. Leitner,* 2001 WI App 172, 247 Wis. 2d 195, 633 N.W.2d 207.

¶ 49. Reviewing courts have reversed a circuit court's decision where the circuit court applied the wrong legal standard or where there was a defect with the plea questionnaire and plea colloquy. *See, e.g., Libke,* 60 Wis. 2d 121; *Shanks,* 152 Wis. 2d 284. For example, in *Libke,* the circuit court denied the defendant's presentence motion to withdraw his plea while incorrectly applying the manifest injustice standard instead of the fair and just reason standard. *Libke,* 60 Wis. 2d at 128. We reversed the circuit court's decision after finding in the record that the defendant had presented a fair and just reason for plea withdrawal. *Id.* at 129. Notably, we never assessed whether the circuit court found that reason incredible.

¶ 50. In *Shanks,* the court of appeals reversed the circuit court's denial of a plea withdrawal motion where the defendant proffered the following reasons: "[d]enial of intent during the plea colloquy, coercive action by defense counsel, haste and confusion in the plea taking, and a prompt motion to withdraw." *Shanks,* 152 Wis. 2d at 291. In that case, the record indicated several defects with the plea questionnaire and the plea colloquy: One, the plea questionnaire indicated that the defendant intended to plead guilty to a different charge than the one before the court. *Id.* Two, during the plea colloquy, the defendant pled guilty to a charge not before the court. *Id.* Three, during a discussion with the circuit court concerning the elements of the charge, the defendant denied the element of intent. *Id.* These defects,

made apparent by the record, warranted a reversal of the circuit court's denial of the defendant's plea withdrawal motion. *Id.* at 292.

¶ 51. The *Shanks* case is a prime illustration of the importance of the plea colloquy and its developed record, which gives courts a good opportunity to review the circuit court's decision to grant or deny a motion for plea withdrawal.

2. History and Development of the Plea Colloquy

¶ 52. We now turn to the plea colloquy and its history to show how the increasing duties imposed on the circuit court to ensure the defendant's understanding of the plea, have prompted an evolution in the meaning of a fair and just reason for presentence plea withdrawal.

¶ 53. More than 40 years ago, in *State v. Strickland,* 27 Wis. 2d 623, 135 N.W.2d 295 (1965), this court held that the circuit court had no duty to inquire into the *defendant's* understanding of his pleas during a plea colloquy. In that case, the defendant argued that his guilty pleas were not intelligently and understandingly made because the circuit court did not inquire of the defendant personally whether he had intelligently and understandingly entered his pleas. *Id.* at 631. Defendant's counsel asserted that federal courts, in accordance with Rule 11 of the Federal Rules of Criminal Procedure, interrogate the accused at the arraignment even though the accused is represented by counsel. *Id.* at 631 n.2.

¶ 54. This court replied that such inquiries were unnecessary where the defendant is represented by counsel. *Id.* The court stated:

185

> Courts have the right to *assume* in such a situation that counsel has fulfilled his duty of proper representation by fully explaining to the accused the nature of the offense charged, the range of penalties, and possible defenses thereto, and satisfying himself that the accused understands such explanations, before permitting the accused to authorize the entry of a plea of guilty. There is no allegation in defendant's motion that this was not done.

> We deem it inadvisable to lay down a rule that trial courts must, in every case, where an accused is represented by counsel at time of entering a plea, before accepting the plea interrogate defendant to make sure that the defendant has understandingly and intelligently entered the plea. However, we recommend that such practice be adopted.

*Id.* at 631–32 (emphasis added).

¶ 55. Four years later in 1969, this court did mandate such a practice. *Ernst v. State,* 43 Wis. 2d 661, 170 N.W.2d 713 (1969), *abrogated by State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986). In *Ernst,* this court overruled the *Strickland* "assumption" and mandated that the circuit courts follow the practice suggested in *State ex rel. Burnett v. Burke,* 22 Wis. 2d 486, 494, 126 N.W.2d 91 (1964). *Ernst,* 43 Wis. 2d at 674. The court mandated that circuit courts have a duty to do the following and make a record thereof:

> 1. To determine the extent of the defendant's education and general comprehension.

> 2. To establish the accused's understanding of the nature of the crime with which he is charged and the range of punishments which it carries.

> 3. To ascertain whether any promises or threats have been made to him in connection with his appearance, his refusal of counsel, and his proposed plea of guilty.

4. To alert the accused to the possibility that a lawyer may discover defenses or mitigating circumstances which would not be apparent to a layman such as the accused.

5. To make sure that the defendant understands that if a pauper, counsel will be provided at no expense to him.

*Id.* The *Ernst* court also added a sixth requirement that the trial judge personally determine whether a factual basis exists to support the plea.[10] *Id.*

¶ 56. In *Bangert,* we overruled language from prior cases that indicated that plea colloquy procedures are mandated by the United States Constitution.[11]

---

[10] The second and sixth duties have been codified. § 63, ch. 255, Laws of 1969. Wisconsin Stat. § 971.08(1)(a) and (b) read as follows:

971.08 Pleas of guilty and no contest; withdrawal thereof. (1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and potential punishment if convicted.

(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

[11] In *State v. Bangert,* 131 Wis. 2d 246, 257, 389 N.W.2d 12 (1986), we explained that *Boykin v. Alabama,* 395 U.S. 238 (1969), "merely sets forth the constitutional standard that there must be an affirmative showing . . . that the plea was knowingly, voluntarily, and intelligently made." Therefore, in *Bangert,* we held that defendants do not have a constitutional right to withdraw a plea merely because the circuit court failed to ascertain his understanding of the nature of the charge on the record during the plea colloquy. *Bangert,* 131 Wis. 2d at 273. Rather, under a new two-step process, the reviewing court may review evidence outside the plea colloquy record that substan-

187

However, the *Bangert* court did "not discard the mandatory requirement that trial judges undertake a personal colloquy with the defendant to ascertain his understanding of the nature of the charge." *Bangert,* 131 Wis. 2d at 260. The court viewed that duty as a statutory requirement under Wis. Stat. § 971.08(1). *Id.*

¶ 57. The *Bangert* court also expanded the judicial duties under Wis. Stat. § 971.08(1)(a), which requires the court to determine that the plea is voluntary. The circuit court must "do more than merely record the defendant's affirmation of understanding pursuant to sec. 971.08(1)(a)." *Id.* at 267. The circuit court must determine a defendant's understanding of the nature of the charge. *Id.* at 268.

¶ 58. The *Bangert* court also added a seventh duty for the circuit court, to "inform the defendant of the constitutional rights which he will be waiving, or to ascertain that the defendant possesses such knowledge." *Id.* at 272.

¶ 59. Since *Bangert,* the court has articulated three additional duties in the plea colloquy for circuit courts. *See State v. Brown,* 2006 WI 100, ¶ 35, 293 Wis. 2d 594, 716 N.W.2d 906. Thus, the duties imposed upon circuit courts during the plea colloquy have expanded significantly. Understanding that a plea of guilty is a conviction, not a mere confession, *see Boykin v. Alabama,* 395 U.S. 238, 242 (1969), we require

---

tiates that the plea was knowingly and voluntarily made. *Id.* at 274–75. One of the effects of this ruling is that it prevents "a defendant [who] does understand the charge and the effects of his plea . . . [from] gam[ing] the system by taking advantage of judicial mistakes." *State v. Brown,* 2006 WI 100, ¶ 37, 293 Wis. 2d 594, 716 N.W.2d 906.

elaborate plea colloquies to "demonstrate the critical importance of pleas in our system of justice." *Brown,* 293 Wis. 2d 594, ¶ 23.

¶ 60. The effect of more elaborate and comprehensive plea colloquies is to ensure that pleas are knowing, intelligent, and voluntary. *Id.,* ¶ 23. The corresponding impact, however, is to make it more difficult for defendants to withdraw their pleas. Unlike circuit courts at the time of *Strickland,* circuit courts today are expected to develop an extensive record related to the defendant's personal understanding of the plea. This undertaking has changed the notion that guilty pleas are merely tentative until after sentence.[12] As long as circuit courts follow the court mandated and statutory requirements during plea colloquies, defendants will ordinarily have difficulty showing a fair and just reason for plea withdrawal if the reason is based on grounds that were adequately addressed in the plea colloquy.[13]

¶ 61. The evolution in the meaning of a fair and just reason for plea withdrawal tracks the policy basis

---

[12] *See* 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.5(a), at 196 (2d ed. 1999), which states:

> Given the great care with which guilty pleas are now taken—including placing the plea agreement on the record, making full inquiry into the voluntariness of the plea, advising the defendant in detail concerning his rights and the consequences of his plea, determining that the defendant understands these matters, and determining that the plea is accurate—there is no reason to view pleas so taken as merely "tentative," subject to withdrawal before sentence whenever the government cannot establish prejudice.

*Id.*

[13] For illustrations of reliance on the record of the plea colloquy, see *State v. Canedy,* 161 Wis. 2d 565, 578–79, 585, 469 N.W.2d 163 (1991), and *Dudrey,* 74 Wis. 2d at 484–85.

for allowing the withdrawal of pleas before sentencing. This policy basis was carefully set out in *Libke:*

> The liberal rule for withdrawal of a guilty plea before sentence is consistent with the efficient administration of criminal justice. It reduces the number of appeals contesting the "knowing and voluntariness" of a guilty plea, and avoids the difficulties of disentangling such claims. It also ensures that a defendant is not denied a right to trial by jury unless he clearly waives it.

*Libke,* 60 Wis. 2d at 127–28 (quoting *United States v. Young,* 424 F.2d 1276, 1279 (3d Cir. 1970)). This rationale was repeated in *Shanks,* 152 Wis. 2d at 288, and *Shimek,* 230 Wis. 2d at 739.

¶ 62. A fair and just reason for plea withdrawal before sentence will always be subject to case-by-case analysis. As a general rule, a fair and just reason for plea withdrawal before sentence will likely exist if the defendant shows that the circuit court failed to conform to its statutory or other mandatory duties in the plea colloquy, and the defendant asserts misunderstanding because of it. In such a circumstance, the State may show that it has been prejudiced, in which case the court will have to decide whether the deficiency in the plea colloquy compromised the knowing, intelligent, and voluntary nature of the defendant's plea. *Cf. State v. Van Camp,* 213 Wis. 2d 131, 139, 569 N.W.2d 577 (1997). A defendant may proffer a fair and just reason, including misunderstanding and changed circumstances, based on matters outside the plea colloquy record. When the plea colloquy is sufficient, however, the defendant's fair and just reason *should* rely on matters outside the plea colloquy record *or* be able to show why it is fair and just to disregard the solemn answers the

defendant gave in the colloquy. A failure to recognize the implications of a valid plea colloquy would "debase[ ] the judicial proceeding at which a defendant pleads and the court accepts its plea." *United States v. Hyde*, 520 U.S. 670, 676 (1997).

¶ 63. A fair and just reason to withdraw a plea before sentence does not depend upon either a deficient plea colloquy or the existence of a constitutionally invalid plea. Nevertheless, because a fair and just reason will nullify both a sufficient plea colloquy and a constitutionally valid plea, the court may consider whether the proffered fair and just reason outweighs the efficient administration of justice.

D. Application of the Fair and Just Reason Standard to this Case

¶ 64. We now review the circuit court's decision in this case, bearing in mind the standard of review and use of the record to support the circuit court's decision.

¶ 65. Jenkins had a lengthy criminal history when he appeared before the court at his sentencing hearing and attempted to withdraw his plea. He had been convicted of two prior felonies, had his parole revoked, and had established a record of violence against both family and strangers. From the beginning of this case, Jenkins had been represented by counsel. He had several months to consider a plea agreement offered by the State. On February 24, 2003, he accepted that agreement—pleading guilty to selling heroin, a third felony—after participating in a thorough plea colloquy with the court. After the plea, he was returned to the Dodge Correctional Institution on a prior offense.

¶ 66. Before the sentencing hearing and two months after entering his plea, Jenkins received and examined a presentence investigation (PSI) that described the offense, the defendant's admission of that offense, the defendant's admission of extensive drug dealing, and the defendant's nickname of "Streetwise," as well as the PSI writer's recommendation of five to seven years in prison, plus one to two years of extended supervision. Hence, before the sentencing hearing, Jenkins knew that the PSI recommended a prison sentence at least two-and-a-half times what the prosecutor was pledged to recommend.

¶ 67. At the sentencing hearing, Jenkins' counsel asked for another 30 to 60 days of postponement to see whether federal authorities would decide to meet with Jenkins. Jenkins' counsel had already debriefed Jenkins and supplied the Milwaukee County District Attorney's office with a summary of information that Jenkins was prepared to discuss. At the request of one prosecutor, two Milwaukee police detectives met with Jenkins. Another prosecutor encouraged federal authorities to talk with Jenkins, but they never accepted the invitation. Consequently, the court decided not to postpone sentencing again.

¶ 68. Jenkins then moved to withdraw his plea. When the court asked him the basis for his request, he proffered the following reason: "Stipulations that I'm not able to fulfill, what I had my projections on. I'm sure the federal agents were meaning to speak to me." In response to the court's question of his understanding of what was going to happen when he entered a plea, Jenkins replied:

> At least I would benefit, at least, you know, something, at least to, you know, be able to get out of the life

I'm already in or I was involved in at the time. And sort of, you know, they bring in at least to assist the state here, you know, from much of the troubles I've caused and the stress we place on Milwaukee, the police department here in this state, and sort of abolish this heroin that's flowing into the states and guns and everything else, so sort of just kind of get myself cleared up and get back on track.

It's not too much about the time, you know. It's not much time. I've done, as you can read, I've done time before. My point is just to get some changes, you know, with myself and help.

¶ 69. To that response, the court told Jenkins that it was not going to permit Jenkins to withdraw his plea. The court reasoned that Jenkins "had a hope that did not come to fruition." Because there was no breach of the plea agreement, the court did not allow Jenkins to withdraw his plea.

¶ 70. On appeal, Jenkins argues that the circuit court's decision should be reversed because it applied the wrong legal standard by considering Jenkins' request for plea withdrawal in the context of a breach of a plea agreement, rather than in the context of his misunderstanding the consequences of the plea. Jenkins argues that the circuit court focused on whether the opportunity to work with law enforcement was part of the plea agreement instead of whether Jenkins *believed* that the opportunity to work with law enforcement was part of the plea agreement. We see this argument as without merit.

¶ 71. First, Jenkins did not proffer a fair and just reason at the time of his motion for plea withdrawal. "[T]he burden is on the defendant to offer a fair and just reason for withdrawal of the plea." *Canedy,* 161 Wis. 2d

at 583–84. Jenkins did not plainly assert that he misunderstood the consequences of the plea. Jenkins asserted that he wanted to withdraw his plea because of stipulations that he could not fulfill and because of his "projections." Disappointment and unfulfilled hopes are not the same as a misunderstanding of the consequences of the plea. *See Leitner,* 247 Wis. 2d 195, ¶ 33; *Dudrey,* 74 Wis. 2d at 486.

¶ 72. Even after the court explicitly asked Jenkins at sentencing about his understanding of what was going to happen when he entered a plea, he did not assert that he thought his cooperation with law enforcement would lead to definite sentencing benefits. Nor did he assert that anyone had told him that his plea would guarantee an opportunity to work with law enforcement. Instead, Jenkins discussed how he wanted to help the community through his cooperation and help himself by getting out of the life he was living. Had Jenkins and his attorney actually had an agreement with authorities, they would have found some way to memorialize the agreement off the record. Jenkins' imprisonment for eight months before the plea made his active cooperation with authorities virtually impossible.

¶ 73. Second, even if we assume that Jenkins alleged a misunderstanding of the plea, the circuit court still had to find that this misunderstanding actually existed. *See Dudrey,* 74 Wis. 2d at 485. The circuit court did not explicitly state during the motion for plea withdrawal that it did not believe that Jenkins misunderstood the consequences of his plea, but the court rejected the proffered misunderstanding when it stated that Jenkins simply had a "hope that did not come to fruition." The circuit court made this statement right

after it heard Jenkins explain what he thought was going to happen.

¶ 74. The circuit court's statement supports the inference that the circuit court found that Jenkins understood the consequences of the plea and simply took his chances on whether he would be able to meet with law enforcement and benefit from that encounter. *See Dudrey,* 74 Wis. 2d at 486. Like the defendant in *Dudrey,* when Jenkins realized that his chances had passed, he decided to withdraw his plea. *See id.* As we have stated, "[t]he defendant must show some reason more than a mere desire to have a trial." *Id.* There must be some fair and just reason for a "change of heart." In its post-conviction decision, the circuit court explicitly found that Jenkins did not misunderstand the consequences of his plea.

¶ 75. Third, even if we were to accept Jenkins' argument that the circuit court applied the wrong legal standard by not considering his plea withdrawal in the context of a misunderstanding of the plea, we must still "independently review the record to determine whether the [circuit] court's decision can be sustained when the facts are applied to the applicable law." *Shanks,* 152 Wis. 2d at 289.

¶ 76. When we review the record, especially the plea colloquy, we find evidence to support a finding that Jenkins did not misunderstand the consequences of his plea.

¶ 77. In the plea colloquy, the State recited the terms of the plea agreement: "The State is recommending 24 months initial confinement, 24 months extended supervision, a thousand dollars fine, plus costs." The court asked Jenkins: "[H]as [the State] correctly set forth what the State is required to recommend at the time of sentencing?" Jenkins replied, "Yes."

¶ 78. Jenkins' affirmative response indicates that he understood what the State would recommend in exchange for his plea. The State's recommendation did not include any benefit conditioned on Jenkins' cooperation with law enforcement. Significantly, Attorney Barrett made a revealing statement about the plea agreement at the beginning of the plea hearing, when he said: "It wasn't much of a negotiation." Attorney Barrett's statement reinforces the fact that Jenkins' cooperation with law enforcement was not part of the plea agreement.

¶ 79. The circuit court also warned Jenkins that it was not required to follow the State's recommendation:

THE COURT: Mr. Jenkins, the State is required at the time of sentencing to make the recommendation that you heard [the State] describe in court. I want you to understand that I am not required to follow that recommendation. I could impose any penalty up to the maximum allowed by law. Do you understand what I am saying?

THE DEFENDANT: Yes, ma'am.

Jenkins' affirmative response indicated that he understood that regardless of any plea agreement, the court was not required to follow the State's recommendation at sentencing. Thus, Jenkins understood that even if he had been able to fully cooperate with law enforcement and earn more favorable comment, the court did not have to follow the State's recommendation.

¶ 80. The court also inquired whether anyone had promised Jenkins something to get Jenkins to plead guilty:

196

| THE COURT: | Other than what the State has agreed to recommend, has anybody promised you anything to get you to plead guilty here today? |
| THE DEFENDANT: | No, they haven't. |
| THE COURT: | Has anybody threatened you to get you to plead guilty? |
| THE DEFENDANT: | No, ma'am. |
| THE COURT: | Are you pleading guilty because you are guilty? |
| THE DEFENDANT: | Totally. |

Jenkins' responses demonstrate that Jenkins did not believe that the State, his lawyer, or any law enforcement official promised him anything beyond the plea bargain to induce him to plead guilty.

¶ 81. The record of the plea colloquy also indicates that the court followed its other statutory and court-mandated duties. First, the court established Jenkins' understanding of the charge against him by referring to the guilty plea questionnaire and the jury instructions for the crime of Delivery of a Controlled Substance. *See* Wis. Stat. § 971.08(1)(a); *Brown,* 293 Wis. 2d 594, ¶ 35. The court informed Jenkins of the range of punishment he was facing. *See id.*

¶ 82. The court also established the factual basis for Jenkins' plea. *See* Wis. Stat. § 971.08(1)(b); *Brown,* 293 Wis. 2d 594, ¶ 35. When the court asked Jenkins if he agreed with the allegations in the complaint, Jenkins explained that he did not agree that he spoke to the undercover officers during the delivery. After hearing Jenkins' objection to one piece of information, the court found that, based on the criminal complaint and its colloquy with Jenkins, there was a factual basis for Jenkins' plea.

¶ 83. Implicit in the court's acceptance of Jenkins' plea was a determination that the circuit court believed that Jenkins understood the nature of the charge and the effects of his plea. *See Id.*, ¶ 37 (stating, "If a defendant does not understand the nature of the charge and the implications of the plea, he should not be entering the plea, and the court should not be accepting the plea.").

¶ 84. Based on the extensive plea colloquy, there is sufficient evidence to support a finding that Jenkins understood the consequences of his plea. We may, however, also look to other evidence in the record to support this conclusion. For instance, we look to the letter that Jenkins' attorney wrote to Jenkins concerning the opportunity to work with law enforcement.[14]

¶ 85. We must accept the circuit court's finding that "th[is] letter refers to a multitude of *possibilities,* none of which a reasonable person would construe as a 'guaranteed opportunity[,]' " unless the finding is clearly erroneous. It is not.

¶ 86. We also refer to the letters that Jenkins wrote to Judge Lamelas before the plea hearing and before the sentencing hearing. In the first letter, dated December 1, 2002, Jenkins foreshadowed accepting the State's plea offer without any reference to future cooperation with law enforcement.[15] In the second letter, Jenkins complained about a conspiracy against him. He

---

[14] For a transcript of the letter, see ¶ 10 above.

[15] Jenkins wrote:

I've now become even more convinced that I'll not be able [to] fully prove my innocence—which only leaves me with one other option. That is to except [sic] this plea offering, which seems the best thing to do, before deciding to go into a full trial, and find myself over-powered by the judicial system and found guilty for a crime I truly was never a part of.

198

stated that it was his understanding that he would have to plead guilty to the charge in order to receive any type of benefit or relief in terms of an agreement. He also told the court that the plea he entered was not genuine or of his own free will, and that he entered the guilty plea "for the purpose of mentally gaining [the court's] approval." He told the court that he was "not guilty of these accusations."[16] Jenkins also complained about his counsel's representation and asked the circuit court to dismiss the case against him.

¶ 87. Jenkins' second letter contradicts prior statements and known facts. When the circuit court referenced the letter, after denying Jenkins' motion for plea withdrawal, it addressed only Jenkins' alleged dissatisfaction with his attorney. The court discounted this dissatisfaction by noting that Jenkins' attorney did not get to control the offer from the State. The court's silence as to other allegations supports a finding that the circuit court did not find Jenkins' letter credible.

¶ 88. Even if Jenkins entertained hopes of giving extensive cooperation to law enforcement in order to potentially affect his sentence, his hopes were too unrealistic in view of the serious charge against him, his lengthy incarceration before his plea, and his extensive criminal history, to constitute a fair and just reason to withdraw his plea when his hopes were not realized.

---

[16] Jenkins wrote:

> I must notify you, your honor, that my statement was fales [sic], and the way it was presented in it's [sic] formulated terms and fashion, for the purpose of mentally gaining your approval.
>
> . . . .
>
> . . . However, I must also notify you that truthfully, I am not guilty of these accusations. The plea I've entered on my last court appearance was not genuine or of my own free willing [sic].

Jenkins knew he could not count on that cooperation to materially affect his sentence.[17]

E. Assertion of Innocence

¶ 89. Finally, we address the question of whether an assertion of innocence is necessary under the fair and just reason standard. We note that like the manifest injustice standard, the fair and just reason standard does not require that the defendant assert his innocence. *See Reppin*, 35 Wis. 2d at 385 n.2 (stating that under the manifest injustice standard, "[t]he defendant may move for withdrawal of his plea without alleging that he is innocent of the charge to which the plea has been entered."). However, an assertion of innocence is a factor "that bear[s] on whether the defendant's proffered reason of misunderstanding, confusion or coercion [is] credible." *Shimek*, 230 Wis. 2d at 740 n.2. In other words, an assertion of innocence is not necessary, but it helps the circuit court evaluate the defendant's "fair and just reason."

¶ 90. In this case, the circuit court did not explicitly address Jenkins' innocence. However, the record supports a conclusion that Jenkins' assertions of innocence were not credible and would therefore not support the credibility of his proffered misunderstanding.

---

[17] The court was told at the sentencing hearing of Jenkins' cooperation and his willingness to cooperate more. Because the court did not impose anything close to the maximum sentence or even the high end of the range recommended in the presentence investigation, we cannot exclude the possibility that the court considered Jenkins' desire to cooperate when it imposed sentence.

¶ 91. Jenkins contradicted any assertions of his innocence at the plea colloquy. In response to whether he was pleading guilty because he was guilty, Jenkins replied, "Totally." Later during the plea colloquy, in response to a question on the accuracy of the criminal complaint, Jenkins agreed to the substantial accuracy of the complaint but then elaborated on his version of the events, thus revealing and admitting his legal culpability.

## III. CONCLUSION

¶ 92. We hold that the circuit court did not erroneously exercise its discretion when it denied Jenkins' motion to withdraw his plea. From the beginning of the case, Jenkins was represented by counsel. He had several months to consider the plea agreement offered by the State. The plea agreement did not include a promise that Jenkins would be guaranteed the opportunity to work with the police. Jenkins participated in a thorough plea colloquy with the court. The record supports the circuit court's determination that Jenkins understood the consequences of his plea. We conclude that the circuit court did not err in denying Jenkins' motion to withdraw his plea.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 93. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I join Justice Butler's concurrence. I, too, am concerned that the majority opinion might be misinterpreted as merging our law for withdrawing a plea of guilty or no contest before sentencing with our law for withdrawing such a plea after sentencing. The *State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986), and

*State v. Bentley,* 201 Wis. 2d 303, 548 N.W.2d 50 (1996), lines of cases are postsentencing cases. Reliance on them in the instant case, which involves a motion to withdraw a guilty plea before sentencing, is misplaced. The standards governing plea withdrawal before sentencing and after sentencing remain distinct.

¶ 94. It is well established that a circuit court exercises discretion in freely allowing the withdrawal of a guilty plea before sentencing for any fair and just reason, unless the prosecution would be substantially prejudiced. I concur with the majority opinion because I believe that the circuit court's order denying the plea withdrawal was within its discretion.

¶ 95. I write separately, however, to raise an issue that is buried in the discussion of whether the circuit court erroneously exercised its discretion: the wheeling-and-dealing that may occur during plea negotiations and the "loose" plea "deals" that sometimes result.

¶ 96. The circuit court concluded that the defendant did not have a plea agreement premised on cooperation with law enforcement, but rather had only a hope for a deal on cooperation and leniency in sentencing.

¶ 97. There was more going on between the lines than appears in the plea colloquy. Apparently the unwritten understanding was as follows: The defendant had to plead guilty to the charges. If he did so, then state or federal law enforcement officials might try to use the defendant to make controlled drug buys or use the information the defendant provided to set up drug dealers to be caught and prosecuted. If the defendant performed as contemplated, the State's sentencing recommendation might be considerably more lenient. The key was that the defendant had to plead guilty before he would be allowed to go to the next step, that is, to meet

with the law enforcement officials to arrange cooperation. The defendant pled guilty after being advised of this scenario.

¶ 98. Unfortunately for the defendant, he was not able to cooperate as he had planned. No arrangements with law enforcement panned out. The defendant subsequently moved to withdraw his guilty plea.

¶ 99. My sense is that the court of appeals took the realities of the criminal justice system, not legal fictions, into account. The court of appeals reasoned that "the trial court believed that *the State and defense counsel* may not have considered working with law enforcement a specific component of the plea agreement [but that the defendant asserts] that *he* believed it was part of the agreement. . . . Jenkins's belief that he would be working with law enforcement was not unreasonable under the circumstances, and provided a fair and just reason for plea withdrawal." *State v. Jenkins,* 2006 WI App 28, ¶¶ 25, 30, 289 Wis. 2d 523, 710 N.W.2d 502 (emphasis in original).

¶ 100. Had the court of appeals sat as the circuit court and allowed the withdrawal of the plea that order would have been affirmed on appeal as an appropriate exercise of discretion. But the test is not what an appellate court would have done had it been the circuit court. The test is whether the circuit court's order denying the plea withdrawal is within the circuit court's range of discretion. The circuit court's refusal to allow withdrawal of the plea was not an erroneous exercise of discretion.

¶ 101. My problem with this case, and the reason I write, is that the instant case highlights a situation that is troublesome for a circuit court both in accepting a guilty plea or plea of no contest and in ruling on a motion for plea withdrawal before sentencing. My un-

derstanding is that the kind of "deal" the State and defense counsel arranged for the defendant is not unusual. It appears to be a common arrangement that the plea agreement struck between the parties is not expressly premised on the defendant's cooperation with law enforcement officials, but that there is nonetheless the "strong suggestion" that the sentence recommendation will be more favorable if the defendant pleads guilty and then cooperates.

¶ 102. Cooperation with law enforcement is vital and these "deals" help make such cooperation with law enforcement possible. These "deals" are left largely unwritten and "loose" in a number of respects because the needs of law enforcement officials and circumstances may change. There is also reluctance to announce in open court that the defendant will be "of service" to law enforcement officials. The "deal" is not placed on the record because any public record would render the defendant useless to law enforcement, might endanger the defendant's life on the street, and might compromise the defendant as a witness in any drug prosecution that he might help bring about.

¶ 103. As a result, a defendant may not fully understand "all the ifs, ands, and buts" of the "deal" that may be explained to him. The defendant does understand, however, that before anything can be done for him, he must plead guilty.

¶ 104. All hope, however, may not be lost for the defendant in this situation. The State asserted before this court that the court of appeals had wrongly assumed that postsentencing cooperation by a defendant sentenced under Truth-in-Sentencing principles cannot yield benefits in the form of sentence modification. The State's brief points out that the circuit court, despite denying plea withdrawal, concluded that the "defendant

is not precluded from providing information after sentencing and applying for a sentence modification in the future based on his actions." The State argues that the defendant may still get the benefit he had hoped for—sentence modification based on postconviction cooperation. The State asserts that such cooperation may be a new factor warranting modification under the right circumstances, citing *State v. Doe,* 2005 WI App 68, ¶¶ 5, 7, 10, 280 Wis. 2d 731, 697 N.W.2d 101.

¶ 105. I remain concerned, however, about the secretive nature of the "deals" and worry that because of them, circuit courts may not be able to ensure that pleas are constitutionally sound. Circuit courts must be on their guard to ensure that a defendant fully understands the circumstances under which a guilty plea "for the possibility of cooperation with law enforcement" is taken.

¶ 106. I nonetheless conclude that in the instant case the denial of the plea withdrawal was within the circuit court's discretion.

¶ 107. For the reasons set forth, I concur.

¶ 108. I am authorized to state that Justice LOUIS B. BUTLER, JR. joins this opinion.

¶ 109. LOUIS B. BUTLER, JR., J. *(concurring).* I concur in the mandate. Barry Jenkins' plea agreement at the time he entered his guilty plea did not include a provision that called for him to receive some benefit at sentencing in exchange for divulging relevant information about other drug perpetrators. While he may have had a "hope" for some sort of leniency should he provide assistance to law enforcement in apprehending other drug dealers, that was not a part of the negotiation he entered into. He cannot now assert that he misunderstood an agreement that he acknowledges he never had.

Consequently, I conclude that the circuit court did not erroneously exercise its discretion when it denied Jenkins' motion to withdraw his guilty plea. *State v. Canedy,* 161 Wis. 2d 565, 579–80, 469 N.W.2d 163 (1991).

¶ 110. I write separately because a guilty plea withdrawal prior to sentencing is controlled by well-settled precedent. *See State v. Bollig,* 2000 WI 6, ¶ 28, 232 Wis. 2d 561, 605 N.W.2d 199; *State v. Kivioja,* 225 Wis. 2d 271, 287, 592 N.W.2d 220 (1999); *State v. Garcia,* 192 Wis. 2d 845, 861, 532 N.W.2d 111 (1995); and *State v. Canedy,* 161 Wis. 2d at 582. A defendant's assertion of a misunderstanding of a plea or plea agreement must be genuine to satisfy the fair and just reason standard for plea withdrawal. *Kivioja,* 225 Wis. 2d at 291; *Canedy,* 161 Wis. 2d at 585–86. The circuit court must determine whether the defendant's reason for withdrawal is credible or plausible or believable. *Kivioja,* 225 Wis. 2d at 291–92. We apply a clearly erroneous standard of review to the circuit court's findings of historical or evidentiary fact. *State v. Turner,* 136 Wis. 2d 333, 343–44, 401 N.W.2d 827 (1987).

¶ 111. In a letter prior to sentencing, Jenkins' attorney advised Jenkins about the possibility of working with the police as an informer in exchange for the possibility of some sort of sentence credit should the information prove useful and should he testify against other perpetrators. The plea agreement, however, was not predicated on Jenkins actually working for the police. The agreement Jenkins entered into was that, in exchange for a plea of guilty, the State would recommend 24 months' initial confinement, 24 months' extended supervision, and a $1000 fine, plus costs. The circuit court failed to see any misunderstanding about the plea or the plea negotiation on Jenkins' part.

206

Jenkins was aware of the possibility that he might be able to earn a better sentencing recommendation from the State if everything worked out and he was able to assist the State in other prosecutions. Due to his continued incarceration, things did not work out, and he therefore was unable to secure a better recommendation. He received the recommendation he bargained for, no more, no less. That should be the end of the case.

¶ 112. Unfortunately, the majority has written an unnecessary and expansive opinion that might be misinterpreted to merge the manifest injustice standard for withdrawal of a guilty plea after sentencing with the fair and just reason standard for withdrawal prior to sentencing. Our standard for reviewing motions to withdraw guilty pleas prior to sentencing under the fair and just reason standard is a good one. Because the majority opinion might be misinterpreted as changing the law with respect to plea withdrawals prior to sentencing, I decline to join it.

¶ 113. For the foregoing reasons, I respectfully concur.

¶ 114. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this concurring opinion.