DAVID T. PROSSER, J.
¶ 108. (concurring). This case presents issues arising from a defendant's motion to withdraw her no contest pleas before sentencing. Current law on plea withdrawal before sentencing is summed up in paragraph 61 of the majority opinion:
"Withdrawal of a guilty plea before sentencing is not an absolute right." Jenkins, 303 Wis. 2d 157, ¶ 32 (citing Canedy, 161 Wis. 2d at 583). "[A] circuit court should 'freely allow a defendant to withdraw his plea prior to sentencing for any fair and just reason, unless the prosecution [would] be substantially prejudiced.'" Id., ¶ 2 (citing Bollig, 232 Wis. 2d 561, ¶ 28). "[T]he burden is on the defendant to offer a fair and just reason for withdrawal of the plea" by a preponderance of the evidence. Canedy, 161 Wis. 2d at 583-84. "[0]nce the defendant presents a fair and just reason, the burden shifts to the State to show substantial prejudice so as to defeat the plea withdrawal." Bollig, 232 Wis. 2d 561, ¶ 34.
Majority op., ¶ 61 (brackets in original).
¶ 109. In Jenkins, this court observed that the state did not argue that it would be substantially prejudiced by Jenkins' plea withdrawal. State v. Jenkins, 2007 WI 96, ¶ 2, 303 Wis. 2d 157, 736 N.W.2d 24. "Therefore, the issues are whether Jenkins had a fair and just reason to withdraw his plea and how a reviewing court should *54 review the circuit court's denial of Jenkins' motion." Id. The Jenkins court then provided a lengthy discussion of the fair and just reason rule, including its general principles and standard of review, its evolving history, its application in general, and its application to the facts of the Jenkins case. Id., ¶¶ 28-91.
¶ 110. Here, by contrast, "The State does not argue that Lopez failed to present a fair and just reason to withdraw her pleas." Majority op., ¶ 3. Thus, the majority opinion "focuses on whether the circuit court erroneously exercised its discretion in concluding that the State would be substantially prejudiced if Lopez were allowed to withdraw her pleas." Id.
¶ 111. In my view, three courts (including this court) have been forced to struggle with whether the defendant's plea withdrawals would substantially prejudice the State because they have tried to apply an obsolete rule. Although I join the majority opinion, I write separately to suggest that the fair and just reason rule should be reexamined and revised so that a defendant is required to meet a higher burden for plea withdrawal before sentencing than the burden under current law. The fair and just reason rule is outmoded because it fails to account for nearly a half century of criminal justice reforms and because it often has no relation to fairness toward or prejudice to the defendant who is seeking to withdraw a plea. Circumstances today are different from circumstances existing when the fair and just reason rule was adopted. The fair and just reason rule warrants reconsideration because it lacks a sound policy basis and minimizes important protections for defendants in the criminal justice system.
*55 I. FAIR AND JUST REASON RULE
¶ 112. As stated in Jenkins, 303 Wis. 2d 157, ¶¶ 37-41, this court adopted the fair and just reason rule in 1967. See State v. Reppin, 35 Wis. 2d 377, 151 N.W.2d 9 (1967). The rule was derived from the American Bar Association (ABA) Project on Minimum Standards for Criminal Justice — Pleas of Guilty § 2.1 (Tentative Draft, Feb. 1967).
¶ 113. Most of § 2.1 dealt with the withdrawal of guilty pleas after sentencing. Section 2.1(a) of the tentative rule read in part as follows: "(a) The court should allow the defendant to withdraw his plea of guilty or nolo contendere whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct a manifest injustice." Id. (emphasis added).
¶ 114. The language in paragraph (a) included three significant words or phrases: (1) "should"; (2) "timely"; and (3) "manifest injustice." All three terms implicate judicial discretion following judicial fact-finding. The rule used "should," not "shall," signaling discretion. The rule pointed to "timely" motions to withdraw a plea, meaning that there was no admonition to the court to grant untimely motions. "Manifest injustice" was a concept requiring development, some of which the ABA spelled out in several subparagraphs of paragraph (a).[1]
*56 ¶ 115. Paragraph (b) of the rule then provided:
In the absence of a showing that withdrawal is necessary to correct a manifest injustice, a defendant may not withdraw his plea of guilty or nolo contendere as a matter of right once the plea has been accepted by the court. Before sentence, the court in its discretion may allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.
Id. (emphasis added).
¶ 116. The last sentence in paragraph (b) appears almost as an afterthought. The sentence clearly established more lenient criteria for plea withdrawal before sentencing, as though neither the state nor the defendant had much of a stake in a defendant's plea before sentencing, but the sentence did include the word "may" and the phrase "in its discretion."
¶ 117. In February 1968 the ABA issued an Approved Draft of the Standards Relating to Pleas of Guilty. This court applied the Approved Draft in Libke v. State, 60 Wis. 2d 121, 128-29, 208 N.W.2d 331 (1973) and Dudrey v. State, 74 Wis. 2d 480, 482, 247 N.W.2d 105 (1976), except that the court substituted the word "should" for the word "may" in each case.
¶ 118. In effect, the court reworded the ABA rule to read: "Before sentence, the court should allow the defendant to withdraw his plea for any fair and just reason unless . . . ." In Dudrey, the court not only re *57 moved the words "in its discretion may" but also added the adverb "freely" — e.g., plea withdrawal "should be freely granted prior to sentencing." Dudrey, 74 Wis. 2d at 482 (emphasis added).[2]
¶ 119. Wisconsin had a limitation, however, that did not appear in the ABA rule. In 1969 the Wisconsin Legislature revised the Wisconsin criminal procedure code. The revision created a new Wis. Stat. § 971.08(2) that read, "The court shall not permit the withdrawal of a plea of guilty or no contest later than 120 days after conviction." § 63, ch. 255, Laws of 1969. This limitation was later deemed regulatory, not mandatory, in State v. Lee, 88 Wis. 2d 239, 246-47, 276 N.W.2d 268 (1979), but the court still noted that it was not "inappropriate for the state to object to the consideration of a motion to withdraw a plea that was brought beyond the time prescribed by statutory regulation.. .. [Ejntertaining an untimely motion to withdraw a plea would ordinarily constitute an abuse of discretion." Id. at 247.
¶ 120. In 1984 the legislature repealed Wis. Stat. § 971.08(2). 1983 Wis. Act 219, § 43. This removed any explicit time limitation between a defendant's plea and a defendant's sentence during which a defendant could move to withdraw a plea.
*58 ¶ 121. In sum, since 1967, Wisconsin law has often appeared to be moving to make it ever easier for a defendant to withdraw a plea before sentencing at the same time it was making the process of taking a plea more complex and more difficult. This inconsistency is too blatant to ignore.
II. CHANGES IN CRIMINAL PROCEDURE
¶ 122. When the ABA adopted its rule on plea withdrawal in 1967, it stated that the "process [of taking pleas before a trial] has received relatively little attention as compared to the actual tried of criminal cases." ABA Project on Minimum Standards for Criminal Justice — Pleas of Guilty 5 (Tentative Draft, Feb. 1967). As a result, "the practices in cases which are disposed of without trial are far from uniform." Id. Thus, the objective of the proposed rule on plea withdrawal — designed for the entire nation — was not "to bring about a substantial shift away from the practice whereby trial-avoiding pleas are obtained and accepted. Rather, the attempt is to formulate procedures which will maximize the benefits of conviction without trial and minimize the risks of unfair or inaccurate results." Id. at 3 (emphasis added).
¶ 123. Preservation of Wisconsin's "any fair and just reason rule" disregards the sea changes in criminal procedure since the late 1960s.[3] Some of these changes are noted below.
*59 A. Defendant's Right to Counsel
¶ 124. Section 1.3 (Aid of counsel; time for deliberation) of the ABA's Tentative Standards Relating to Pleas of Guilty provided in part that:
(a) A defendant should not be called upon to plead until he has had an opportunity to retain counsel or, if he is eligible for appointment of counsel, until counsel has been appointed or waived. A defendant with counsel should not be required to enter a plea if his counsel makes a reasonable request for additional time to represent the defendant's interests.
¶ 125. These principles, which appear so fundamental today, were not nationally recognized until the 1960s and 1970s. It must he remembered that in Betts v. Brady, 316 U.S. 455 (1942), the United States Supreme Court determined that even though an indigent defendant requested counsel, the law did not require that defendants be appointed an attorney in all cases. Id. at 457, 473. The Supreme Court reconsidered the issue and overruled Betts in 1963. Gideon v. Wainwright, 372 U.S. 335, 339 (1963). In Gideon, the Supreme Court determined that a defendant has the right to an attorney, even if he cannot afford one. Id. at 344 *60 ("[I]n our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth."). The right to counsel spans the spectrum of criminal offenses for which a defendant may be imprisoned, from felony to misdemeanor, and no defendant may be imprisoned if he has been denied the right to counsel. Argersinger v. Hamlin, 407 U.S. 25, 37 (1972).
¶ 126. Argersinger (involving the right to counsel in misdemeanor cases) was not decided until five years after the tentative ABA rule on plea withdrawal was issued. See id.
¶ 127. In sharp contrast, Wisconsin has recognized a criminal defendant's right to counsel for more than 150 years. See Carpenter v. Cnty. of Dane, 9 Wis. 249 (*274) (1859). "Section 7 of art. I., of the constitution of this state, and § 2 of chap. 164, R. S., 1859, humanely and wisely provide that in all criminal prosecutions, the accused shall enjoy the right to be heard by himself and counsel. . . ." Id. at 251 (*275-76); see also State ex rel. Traister v. Mahoney, 196 Wis. 113, 122, 219 N.W. 380 (1928) ("The right of any one accused of a criminal offense to be heard by counsel is guaranteed by our constitution, art. 1, sec. 7."). Carpenter determined that circuit courts have the power and the duty to appoint an attorney for a defendant who cannot afford one, and the attorney may recover his fees from the county. Carpenter, 9 Wis. at 252-53 (*277-78). The court in Carpenter reasoned that "it would be a reproach upon the administration of justice, if a person, thus upon trial, could not have the assistance of legal counsel because he was too poor to secure it." Id. at 251 (*275).
*61 ¶ 128. Reference in the 1967 ABA standards to the right to counsel helps to place the plea withdrawal rule in historical context. Today, failing to provide counsel to an indigent defendant or ineffective assistance of counsel to a defendant would provide compelling reasons to withdraw a plea before or after sentencing. However, these sound reasons are not present in this case.
B. Defendant's Right to Make Plea Decision
¶ 129. Section 3.2 (Relationship between defense counsel and client) of the 1967 ABA standards reads in part: "(a) Defense counsel should conclude a plea agreement only with the consent of the defendant, and should ensure that the decision whether to enter a plea of guilty or nolo contendere is ultimately made by the defendant."
¶ 130. In Wisconsin, the decision to plead guilty or no contest must be made personally by the defendant. State v. Burns, 226 Wis. 2d 762, 771, 594 N.W.2d 799 (1999), and normally a defendant will be asked on the record how she pleads so that her decision is expressly and personally stated on the record. As will be noted below, these principles do not help the defendant in this case.
C. Plea Questionnaire and Waiver of Rights Form
¶ 131. This court has attempted to assure that criminal defense attorneys conscientiously represent their clients. One effective tool is the plea questionnaire. Plea questionnaires and waiver of rights forms serve as checklists for attorneys and defendants, in an effort to provide reasonable certainty that all critical *62 issues will be discussed during the attorney-client relationship before the defendant enters a plea.
¶ 132. In all probability, plea questionnaires were not widely used in the 1960s. The first reference to a plea questionnaire in a Wisconsin Supreme Court decision did not appear until 1986. State v. Carter, 131 Wis. 2d 69, 73, 389 N.W.2d 1 (1986) (referring to a 1983 Milwaukee County form). The Wisconsin Court Records Management Committee appears not to have developed a uniform form for the state until June of 1998.
¶ 133. Today's plea questionnaires are very detailed and may include parallel text in a different language to assist a defendant who is not fluent in English. The Spanish language questionnaire used by Minerva Lopez (Lopez) was first published in January 2006.
D. Comprehensive Plea Colloquies
¶ 134. Notwithstanding a defendant's representation by an attorney and the defendant's likely use of a plea questionnaire, this court has supplemented the plea requirements of Wis. Stat. § 971.08 and mandated an extensive, time-consuming plea colloquy, State v. Brown, 293 Wis. 2d 594, ¶ 35, 293 Wis. 2d 594, 716 N.W.2d 906; State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), to reinforce a defendant's understanding of the circumstances with respect to his case, court procedure, and the law, and to assure that any plea he makes is knowing, intelligent, and voluntary.
¶ 135. The Brown court hailed the importance of the landmark Bangert decision and quoted heavily from it. The Brown court explained:
To head off postconviction hearings on plea withdrawals, the [Bangert] court said:
*63 We reiterate that the duty to comply with the plea hearing procedures falls squarely on the trial judge. We understand that most trial judges are under considerable calendar constraints, but it is of paramount importance that judges devote the time necessary to ensure that a plea meets the constitutional standard. The plea hearing colloquy must not be reduced to a perfunctory exchange. It demands the trial court's "utmost solicitude."
Brown, 293 Wis. 2d 594, ¶ 33 (quoting Bangert, 131 Wis. 2d at 278-79). "Such solicitude will serve to forestall postconviction motions, which have an even more detrimental effect on a trial court's time limitations than do properly conducted plea hearings." Id. (quoting Bangert, 131 Wis. 2d at 279).
¶ 136. Plea colloquies of great length and detail simply did not exist at the time the guilty plea withdrawal rule was adopted. Today it is counterproductive to require circuit courts to adhere to the comprehensive plea colloquy outlined in Brown and then to instruct them that plea withdrawals should be freely granted prior to sentencing for any fair and just reason.
¶ 137. If a defendant's plea is not knowing, intelligent, and voluntary, the plea constitutes a "manifest injustice" and the defendant may withdraw the plea before or after sentencing. If the defendant was denied the effective assistance of counsel, the defendant may withdraw the plea before or after sentencing. State v. Bentley, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996); State v. Rock, 92 Wis. 2d 554, 558-59, 285 N.W.2d 739 (1979). Grounds for "manifest injustice" enumerated in the original ABA Project on Minimum Standards for Criminal Justice — Pleas of Guilty § 2.1 (Tentative Draft, Feb. 1967) or in the revised ABA Standards for *64 Criminal Justice — Pleas of Guilty § 14-2.1(b)(i)(A)-(D)[4] (3d ed. 1999), and any "manifest injustice" found in Wisconsin case law justifying plea withdrawal after sentencing would permit plea withdrawal before sentencing.
¶ 138. In my view, the court should not permit a defendant to withdraw a plea before sentencing unless the defendant is able to prove a manifest injustice, provided that the defendant has been accorded the rights and procedural protections in relation to pleas that have been enshrined in our law. Our system should always seek to promote the fair treatment of defendants, but it should not be captive to manipulation by defendants.
III. LOPEZ'S PLEA WITHDRAWAL
¶ 139. The facts in this case undermine the claim of a fair and just reason for the defendant to withdraw her pleas.
¶ 140. On October 2, 2008, the State issued a complaint charging Lopez with 15 counts of various forms of child abuse. Lopez waived the preliminary examination and was bound over for trial.
¶ 141. The State filed an information and Lopez was arraigned on November 3, 2008.
¶ 142. On July 24, 2009, the State amended the information so that Lopez was charged with 22 counts of criminal conduct related to her daughter.
¶ 143. On November 19, 2009, the defendant accepted a plea bargain and entered pleas of no contest to six counts of the information, namely, Counts 1, 8, 12, *65 15, 18, and 21. Counts 2, 3, 4, 5, 6, 7, 9, 10, 11, 13, 14, 16, 17, 19, 20, and 22 were dismissed and read in, and one sentence enhancer was dismissed.
¶ 144. The court conducted multiple hearings following the defendant's initial appearance. The court engaged interpreters for all these hearings. The defendant was represented by three attorneys — Taavi McMahon, Andrew Martinez, and Mark Maciolek — all of whom spoke Spanish and all of whom sought to withdraw from the case because of alleged dissatisfaction by the defendant.[5] Attorney Maciolek represented Lopez from April 17, 2009, through her plea hearing on November 19, 2009, until March 23, 2010. In short, Attorney Maciolek represented Lopez for seven months before Lopez entered a plea.
¶ 145. The defendant had more than a year to think about her case prior to her plea. The court set a date for trial at a scheduling hearing on August 13, 2009 — three months before the plea — and it informed the parties then that no further continuances would be permitted. The defendant knew for two months before her plea that the State would be able to use the Safe Harbor videotapes of interviews with her daughter if the case went to trial.
¶ 146. After Judge Stuart Schwartz retired on October 2, 2009, the Lopez case was assigned to Circuit Judge Stephen Ehlke. The defendant promptly filed a motion for substitution. When a new judge, Nicholas J. McNamara, was assigned, he denied the defendant's motion for a 30-day extension. The defendant suddenly pled the next day.
*66 ¶ 147. As noted above, Attorney Maciolek and the defendant went over a four-page plea questionnaire in Spanish as well as English. Lopez signed the document. She indicated that she was 33 years old, had 12 years of schooling, and had reviewed the entire document with her attorney. She signed her name immediately below the statement: "Pido al juez que acepte mi declaración y me declare culpable." (I am asking the court to accept my plea and find me guilty).
¶ 148. At Lopez's plea hearing, Judge McNamara conducted a textbook plea colloquy.[6] He read the six counts to which she pled, one at a time, and accepted the defendant's plea on each charge, asking follow-up questions to ensure that the defendant understood the implications of the pleas.
¶ 149. The defendant was responsive to the court's questions. She once spoke up saying that she did not understand, and the court rephrased the question. The defendant acknowledged that she had gone over the Spanish language plea questionnaire with her attorney. "[A]re you confident that you understood all of the questions and the information contained on the *67 plea questionnaire and waiver of rights form?" the court asked. Yes, Your Honor," she replied.
¶ 150. Another time, the court asked: "Right now of course you're receiving a translation. Are you satisfied with the translation that you are receiving?" "Yes, Your Honor," the defendant replied.
¶ 151. There were other pertinent questions:
THE COURT: And have you entered your pleas today freely and voluntarily?
THE DEFENDANT: Yes, Your Honor.
THE COURT: And are you satisfied that this plea is being made voluntarily, intelligently and with understanding?
MR. MACIOLEK: I am.
¶ 152. Four months later, on March 19, 2010, the court received a pro se motion from the defendant to withdraw her pleas. She accused Attorney Maciolek of wantonly taking advantage of her emotional distress, confusion, and disorientation, and forcing her to accept pleas without explanation. She claimed that her attorney never advised her to reject pleas if she did not fully understand the charges and penalties.
¶ 153. On May 10, 2010, almost six months after her pleas, the defendant's fourth attorney filed a formal motion for plea withdrawal. The motion claimed, in part:
1. That the defendant was unable to make a knowing plea as a result of the failure of previous counsel to fully explain the elements of the crime, maximum penalties, and likely outcome of the plea;
*68 2. That during the colloquy with [the] court, the defendant was excessively compliant and overly deferential to the court to the extent that her answers were made out of respect and deference to the court rather than actual understanding of the meaning of the court's questions;
3. That the defendant was rushed into making a decision regarding the plea without adequate opportunity to consult and confer with people in her support network who had been supporting her and advising her since the beginning of her incarceration;
6. As a result of one or all of the above assertions, the defendant's pleas were not intelligent, knowing, or voluntary.
¶ 154. The majority opinion sums up the defendant's fair and just reasons: "Lopez contended that her pleas were rushed, and that she entered her pleas unknowingly due to her limited English." Majority op., ¶ 3 n.2.
¶ 155. The defendant's contention that she did not understand what she was doing when she entered the pleas disregards both the length of time that passed between the initial charges and the plea colloquy and the extensive efforts throughout to accommodate the defendant's language deficiencies. If the court interpreters, Spanish language forms, and Spanish-speaking attorneys were insufficient, one wonders what more could have been done and what sort of disturbing precedent would be set by this case.
¶ 156. The claim that Lopez was "rushed" into making her pleas may find superficial support in Judge McNamara's comment that "of course all the parties know that this plea hearing came very quickly"— *69 namely, the day after a status conference. However, the prosecutor, Corey Stephan, commented during the plea hearing that "[w]e didn't think that there was ever going to be a plea in this case."
¶ 157. In explaining to the court why the plea was in the public interest, Stephan stated:
I don't think this is letting this defendant off easy. I think that this is giving her an opportunity to accept responsibility for the offense and I think . .. any time a defendant asks for a plea agreement, I think that we're to come in and make a good faith effort to resolve the case and I will tell you that this offer that we are presenting here today is substantially the same offer that has been available to her since the middle of the summer. It's just that she now wishes to accept it, and there were some minor detail changes that I don't think that we need to get into here, but it's substantially the same offer, nothing really changed, but she is now in a place where she wishes to accept it and I think it's in the best interest of the State and the child to step forward and accept the offer on behalf of the State and to re-extend our offer.
(Emphasis added.)
¶ 158. There is no evidence that the defendant's attorney pressured her into entering a plea against her will, and the circuit court so found. In all probability, Attorney Maciolek counseled the defendant to reflect on the strength of the State's evidence and the possibility that contrition and remorse on her part would play better than defiance, blame-shifting, and unwarranted claims that extreme child abuse was a "family matter not criminal in nature." (See Defendant's Pro Se Motion filed March 19, 2010.)
*70 ¶ 159. Finally, the motions to withdraw the defendant's pleas were untimely under any reasonable standard.[7]
¶ 160. Judge McNamara determined that the defendant had offered a fair and just reason for withdrawing her pleas,[8] but he concluded that plea withdrawal would be substantially prejudicial to the State.
¶ 161. It would be hard for this court to conclude that Judge McNamara's first determination was an erroneous exercise of discretion, given the current state of the law. However, Judge McNamara, whose performance was absolutely superior, was trying to apply law that no longer makes any sense.
*71 ¶ 162. That is why the fair and just reason rule must be reconsidered.
¶ 163. For the foregoing reasons, I respectfully concur.
¶ 164. I am authorized to state that Justice MICHAEL J. GABLEMAN joins this concurrence.

 "In 1979 the ABA standard was revised to read as follows: 'After entry of a plea of guilty or nolo contendere and before sentence, the court should allow the defendant to withdraw the plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.'" State v. Jenkins, 2007 WI 96, ¶ 40, 303 Wis. 2d 157, 736 N.W.2d 24 (quoting State v. Canedy, 161 Wis. 2d 565, 581, 469 N.W.2d 163 (1991)).
Thus, this court adopted "should" six years before the ABA, and it added the adverb "freely," which does not appear in the ABA rule.

 The current state of criminal procedure makes a lenient plea withdrawal standard unnecessary. Detailed plea colloquies seemed to influence the federal rule's shift [former Fed. R. Crim. R. 32(d), present Fed. R. Crim. P. 11(d)(2)(B)] from allowing plea withdrawal unless the government could show prejudice to allowing withdrawal only if the defendant could show a fair and just reason.
*59 Given the great care with which guilty pleas are now taken— including placing the plea agreement on the record, making full inquiry into the voluntariness of the plea, advising the defendant in detail concerning his rights and the consequences of his plea, determining that the defendant understands these matters, and determining that the plea is accurate — there is no reason to view pleas so taken as merely "tentative," subject to withdrawal before sentence whenever the government cannot establish prejudice.
5 Wayne R. LaFave et ah, Criminal Procedure § 21.5(a), at 868 (3d ed. 2007) (internal footnote omitted). The view that pleas are merely "tentative" until after sentencing is inconsistent with contemporary practice.

 The grounds for manifest injustice in ABA Standards for Criminal Justice — Pleas of Guilty § 14 — 2.1(b) (i)(E)-(F) (3d ed. 1999) are inapplicable under Wisconsin law.

 Attorney Maciolek was not permitted to withdraw until well after the plea.

 At a motion hearing May 10, 2010, Judge McNamara made the following comment:
As counsel well knows I'm not only a relatively new judge to the bench, but relatively new to the world of criminal cases. And as such I can honestly say that in such things as taking a plea, it's been my absolute effort and intention to be very conscientious about the sufficiency, the legality of the pleas that I've taken. ... I can say in all of the pleas that I've taken since I've taken the bench,... I have never intend[ed] to cut corners and go quickly. . . , and I know. . . with every plea I've taken I've intended to make sure that I was technically doing everything that I was obligated to do to have a fair and sufficient plea. Not just for the record, but really in fairness to all the parties involved.

 Judge McNamara noted that Lopez "certainly did not expeditiously seek to withdraw her plea. She waited until 'the trial and conviction and sentencing of her husband. She waited until approximately ten days after the Court received the presentence investigation report with a recommendation for a sentence by the Department of Corrections."

 Although Judge McNamara determined that Lopez established a fair and just reason for withdrawing her pleas, he astutely noted that a defendant's burden to establish a fair and just reason is quite low:
The second aspect as to whether or not Ms. Lopez has shown a fair or just reason to withdraw her plea is a little trickier. I do believe that the law on that is at times conflicting. As was noted by Mr. Glinberg there needs to be something more than just a desire to have a trial, at the same time all of the cases really indicate that there just needs to be a mere showing or adequate reason for the defendant's change of heart. And it's clearly a relatively low burden of proof for the defendant to show that she has a fair and just reason to withdraw her plea. In the various cases such as Shanks or Libke, the kinds of things that would constitute a fair and just reason for withdrawing the plea includes an assertion of innocence, a genuine misunderstanding of the pleas' consequences, and hasty entry of the plea, confusion on the defendant's part, coercion by trial counsel, and also whether the defendant sought to withdraw the plea expeditiously or efficiently or relatively quickly.